UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL HUGH SIMS, | ) | No. CV 15-9980-AGR |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

    Plaintiff Sims filed this action on December 30, 2015. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 11, 12.) On August 3, 2016, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

    Having reviewed the entire file, the court affirms the decision of the Commissioner.

## I.

## PROCEDURAL BACKGROUND

On July 17, 2012, Sims filed an application for disability insurance benefits and supplemental security income benefits, alleging an onset date of August 1, 2009. Administrative Record ("AR") 20. The applications were denied initially and on reconsideration. AR 20, 89-90, 125-26. Sims requested a hearing before an Administrative Law Judge ("ALJ"). On March 5, 2014, the ALJ conducted a hearing at which Sims and a vocational expert ("VE") testified. AR 33-56. On April 4, 2014, the ALJ issued a decision denying benefits. AR 17-29. On November 2, 2015, the Appeals Council denied the request for review. AR 1-6. This action followed.

## II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

The ALJ found that Sims last met the insured status requirements on September 30, 2014. AR 22.

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Sims had the following severe impairments through the date last insured: COPD (chronic obstructive pulmonary disease) and multiple joint arthralgia. AR 22.

The ALJ found that, through the date last insured, Sims had the residual functional capacity ("RFC") to perform light work except he cannot climb ladders, ropes or scaffolds; can occasionally climb ramps or stairs, balance, stoop, crouch, crawl or kneel; must avoid concentrated exposure to extreme cold and heat; and must avoid all exposure to pulmonary irritants and industrial hazards. AR 24. The ALJ found that Sims was capable of performing past relevant work as an inventory specialist as generally performed. AR 28.

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

### C. Treating Physician

Sims contends the ALJ erred in evaluating the opinion of his treating physician, Dr. Moe.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a medically acceptable treating source, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

"'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.'" *Ryan v. Comm'r*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation omitted) (emphasis in original). However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

The ALJ discussed Dr. Moe's treating records. AR 25-26 (citing Exhs. 1F, 2F.) However, the ALJ appears to have overlooked Dr. Moe's opinion dated December 21, 2012, which is included at the end of a 98-page exhibit that otherwise contained duplicative medical records. AR 576-79.

1   The Commissioner argues that the ALJ's error was harmless. The Ninth Circuit
2 has not absolutely precluded harmless error when an ALJ does not mention a treating
3 physician's opinion. "Our precedents do not quantify the degree of certainty needed to
4 conclude that an ALJ's error was harmless, and we would hesitate to suggest a rigid
5 rule for all such cases. But it does seem that where the magnitude of an ALJ error is
6 more significant, then the degree of certainty of harmlessness must also be heightened
7 before an error can be determined to be harmless. In other words, the more serious the
8 ALJ's error, the more difficult it should be to show the error was harmless." *Marsh v.*
9 *Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). In *Marsh*, the ALJ did not mention Dr.
10 Betat's notes or his clinical progress notes. *Id.* at 1171. The Ninth Circuit noted that the
11 district court "gave persuasive reasons to determine harmlessness" from the ALJ's error
12 to mention the treating physician's opinion. *Id.* at 1173. Nevertheless, "[i]n the
13 circumstances of this case, where the ALJ did not even mention Dr. Betat's opinion that
14 Marsh's chronic bursitis rendered her 'pretty much nonfunctional,' we cannot
15 'confidently conclude' that the error was harmless. *Id.* (citation omitted). The court
16 remanded with instructions to the district court to remand to the ALJ and invite the ALJ
17 to comment on Dr. Betat's medical opinions and records. *Id.*

18   In a report dated December 21, 2012, Dr. Moe opined that Sims was incapable of
19 even low stress work due to his chronic, constant pain and shortness of breath. AR
20 577. Dr. Moe further opined that Sims could sit, stand or walk less than two hours total
21 in an eight-hour workday, and could never lift even items less than 10 pounds. AR 578.

22   In contrast to *Marsh*, the ALJ cited and relied upon the treating records of Dr.
23 Moe and Northeast Valley Health Corp. AR 25-26. The ALJ noted that, according to
24 the intake form in November 2011, Sims stated he rides a bike 10-15 minutes twice a
25 day to and from a bar, drinks about a six-pack of beer per week, and cooks for himself.
26 AR 25, 336. The ALJ further noted that in April 2013, the most recent of Dr. Moe's
27 treating records, Sims had normal range of motion and muscle strength with no pain
28

upon inspection. AR 26 (citing AR 403-05.)² Sims was negative for fatigue and malaise; negative for anxiety, depression and insomnia; and negative for memory impairment. AR 403-04. Sims had normal insight and judgment, and appropriate mood and affect. AR 405. Dr. Moe noted that Sims' pain is actually "worse when lying down" and improves with Ibuprofen. His lungs were clear and his respiratory effort was normal. *Id.* The ALJ also relied upon the treating records in between November 2011 and April 2013. The ALJ noted that Sims indicated his arthritic pain was "controlled with motrin alone" in November 2012. AR 26, 383; *see* AR 384 (pain at 4/10). He had bouts of shortness of breath and coughing after quitting cigarettes for 15 days. AR 383. The ALJ noted that Sims presented with improved symptoms but requested that Dr. Moe fill out disability paperwork one month later on December 21, 2012 (the date of Dr. Moe's report). AR 26, 391 (reporting occasional shortness of breath, coughing and fatigue). Sims then reported he started smoking again in January 2013. AR 395. The ALJ noted that, when Sims complained of shortness of breath, coughing and wheezing during the next visit in February 2013, Sims had decreased range of motion in the shoulders and normal respiratory effort upon examination. Sims' pain was 3/10. AR 26, 400-01.

In addition to citing Dr. Moe's treating records, the ALJ also reviewed Sims' statements and other medical reports. Sims reported in October 2012 that he can lift 20 to 30 pounds, goes shopping for 30-45 minutes at a time, and walks, rides a bike or takes public transportation. AR 25, 27, 249, 251. He thought he handled stress and changes in routine "ok, I gu[e]ss." AR 252. At the hearing in March 2014, Sims testified that he could lift 10 or 15 pounds. AR 47, 50. Sims testified that he does not get mental health treatment because he does not feel he needs it. AR 44. His memory and concentration are pretty good. AR 51-52. This is consistent with Dr. Moe's treating records, which indicate negative for memory impairment. AR 369, 388, 396, 404.

---

² Although the ALJ cited the correct pages, his citation to Exhibit 1F is a typographical error. The citation should read Exhibit 2F, which the ALJ correctly cited in the immediately preceding citation.

1      The ALJ gave great weight to the opinions of the examining physician and state
2 agency review physician, which agreed with the objective findings in the record and
3 Sims' statements regarding his capacity to perform daily activities. AR 27. The ALJ
4 discussed Dr. Taylor's internal medicine evaluation in October 2012. AR 26-27. Sims
5 has smoked for 40 years and continues to smoke. He reported getting frequent
6 shortness of breath. AR 590. Sims was neat and clean, and had normal muscle tone.
7 He did not have swelling or tenderness to direct palpation of any joint. His range of
8 motion was normal. AR 592. Palpation of the paravertebral muscles in his back did not
9 elicit pain or spasm. His back has decreased range of motion, and x-rays indicated mild
10 scoliosis and mild degenerative disc disease. AR 592-93. Sims had a dry hacking
11 cough on several occasions during the examination and had fair air movement. AR
12 592-93. Dr. Taylor limited Sims to light work due to his HIV status and shortness of
13 breath. Sims had no sitting limitations and could stand or walk up to six hours in an
14 eight-hour workday. AR 594. The ALJ incorporated the limitations opined by Dr.
15 Zheutlin. AR 27.

16      Based on the ALJ's interpretation of, and reliance on, Dr. Moe's treating records,
17 Sims' own statements and the other medical sources, it is evident that remand for
18 reconsideration of Dr. Moe's opinion would be an exercise in futility. Dr. Moe's opinion
19 is inconsistent with the ALJ's findings regarding Dr. Moe's treating records, Sims'
20 statements and the other medical sources. The ALJ's error in overlooking Dr. Moe's
21 opinion is harmless and inconsequential to the disability determination on this record.

22      The court notes that Sims' age category changed in June 2015. There is
23 indication, such as reduction in lift capacity and the Appeals Council's reference to
24 medical records in late 2014, that Sims' condition may have deteriorated. The Appeals
25 Council correctly advised that Sims must apply again to the extent that he seeks to
26 establish disability after the date of the ALJ's decision, April 4, 2014. AR 2.

27
28

7

**D.     State Agency Review Physicians and Mental Limitations**

Sims argues that the ALJ erred in rejecting the opinions of state agency review physicians Dr. Martin and Dr. Balson, who reaffirmed Dr. Martin's findings. AR 64-69, 98-104.

The ALJ found no limitations in the area of daily activities and mild limitations in social functioning. The ALJ found no limitations in the area of concentration, persistence of pace. AR 23. The ALJ relied on the examining physician's opinion. AR 23. In the October 2012 psychiatric examination, Sims reported that he had smoked crystal methamphetamine for 39 years and had used cocaine and alcohol. He had been sober since July 2012. He felt depressed since he separated from his girlfriend in July 2011 after 18 years together. AR 23, 596-97. His clothing was clean and appropriate. He was calm, focused and not distracted or restless. His attention and immediate recall were intact, and his past memories were fairly intact. His mood was depressed and anxious, and his thought process was logically connected with no derailment. He was diagnosed with major depressive disorder, mild with anxious mood. AR 23, 598-99. Sims had no limitations on simple functioning, mild limitations on complex functioning and moderate limitations on interpersonal functioning. His prognosis was fair. AR 599.

Dr. Martin, a nonexamining physician, disagreed with the examining physician's opinion that Sims had mild limitations in complex functioning "due to residual depression." AR 66. Dr. Martin opined that Sims had moderate limitations in concentration, persistence or pace. AR 65. In her view, Sims was capable of "carrying out simple and some detailed instructions of low to intermediate complexity," but "would have difficulty with highly detailed due to residual anxiety and depression." AR 69.

To the extent that the ALJ erred in not explicitly addressing the disagreement between the examining physician and state agency review physician, the error was harmless. The opinion of a nonexamining physician cannot by itself constitute
8

1  substantial evidence to justify rejecting the opinion of an examining physician. *Hill v.*
2  *Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012).  Dr. Martin's opinion that a person with
3  depression is limited to unskilled work is conclusory and unsupported.[3]  The ALJ noted
4  that Sims worked as an inventory specialist for 10 years until August 2009.  AR 28, 196-
5  97.  That 10-year period occurred during the 39-year time frame that he was smoking
6  crystal methamphetamine according to his own reports.  AR 597.  To summarize, an
7  inventory specialist compiles data, maintains inventory records, keeps a back-order file
8  in an established sequence, tracks stock supply and need for replenishment, prepares
9  requisitions, verifies their accuracy and recommends disposal of excess stock.  The job
10 is classified as Reasoning Level 4[4] and SVP 5 (over six months up to one year). DOT
11 219.387-030.  Sims testified at the hearing that he concentrates "fairly well."  AR 52.

12      The ALJ evaluated the opinion of the treating physician, who also noted Sims'
13 long history of methamphetamine dependence since age 18.  AR 23, 582.  In response
14 to a question about intellectual functioning (which included concentration), the treating
15 physician responded that Sims' cognition was OK and his judgment was fair.  AR 23,
16 582.  Sims needed no assistance with daily activities.  AR 583.  On the other hand, the
17 treating physician opined that Sims had "decreased focusing takes longer to complete
18 things."  The ALJ rejected that opinion as self-contradictory and not supported by the
19 objective medical record.  AR 23, 584.

---

[3] Dr. Martin opined that Sims has moderate limitations in social functioning due to depression with anxiety component.  The moderate limitations were in Sims' ability to interact with the general public and get along with coworkers without distracting them. AR 69.  Dr. Martin's opinion is conclusory.  Dr. Martin noted that the examining physician found intact social skills.  AR 65. The ALJ found mild limitations in social functioning.  AR 24.

[4] Reasoning Level 4 means to "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists.  Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form."  DOT 219.387-030.

9

The Ninth Circuit has made clear that a "reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). A reviewing court is not, however, "deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). The ALJ relied on the examining physician's opinion that Sims was focused and not distracted, his attention was intact, and his thought process was logically connected without derailment. AR 23. Given the ALJ's rejection of the treating physician's milder assessment of Sims' decreased focus, any error in failing to expressly reject Dr. Martin's opinion is harmless.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: August 29, 2016

*Alicia G. Rosenberg*
ALICIA G. ROSENBERG
United States Magistrate Judge